UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------X
MAURICE SIMPSON,

                Petitioner,                           MEMORANDUM & ORDER
                                                                    05-CV-2279 (NGG)

      - against -

CALVIN WEST,
Superintendent, Elmira Correctional
Facility,

                Respondent.
----------------------------------------------X

GARAUFIS, United States District Judge.

     Pro se Petitioner Maurice Simpson ("Simpson" or "Petitioner") brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Simpson challenges his convictions rendered in New York Supreme Court, Kings County for Burglary in the Second Degree (New York Penal Law § 140.25(2)) and Theft of Services (New York Penal Law § 165.15(3)). For the reasons set forth below, Simpson's Petition is DENIED.

## I. FACTUAL BACKGROUND

     Simpson was charged with second degree burglary and four alternative counts of third degree robbery, petit larceny, fifth degree criminal possession of stolen property, and seventh degree criminal possession of a controlled substance, and with theft of services in connection with an incident involving the robbery of an apartment on Nostrand Avenue in Brooklyn, New York. (Wrenn Aff. Opp. Pet. ¶¶ 4, 12.) On August 2, 2000, at approximately 5:30 p.m., livery cab driver Alpha Yagouba Bah ("Bah") was stopped by Petitioner at a traffic light at the

1

intersection of Fulton Street and Franklin Avenue. (Transcript of the Trial, dated May 31, 2001 ("Trial Tr."), at 104-06, 117.) Simpson asked Bah to drive him to Nostrand Avenue between Lenox and Linden streets. (Id. at 106.) Upon arrival, Bah demanded his fare, and Simpson told him to wait at the curb. (Id.) Bah parked the livery cab, and Simpson stood outside 1367 Nostrand Avenue "for a long time," and then entered the building with another man. (Id. at 106-07.) About a half hour later, he came out and promised Bah twenty dollars if he would continue to wait. (Id. at 107.) Simpson entered the building again, and a half hour later he returned to the cab, carrying several VCR's in his arms. (Id. at 107-08.) Simpson instructed Bah to drive him to a place where he could sell the VCR's, and warned Bah that if he did not do so, that Simpson would not pay him at all. (Id. at 108-09.) Bah drove Simpson to the 71st Police Precinct, stopped two police officers, and relayed to them the past hour's events. (Id. at 109-10.)

The police officers apprehended Simpson and searched the cab, from which they seized the VCR's, and searched Simpson, recovering five vials of crack cocaine and a crack pipe, jewelry, a cell phone and a remote control. (Id. at 158-59.) The officers took Simpson and the seized goods into the precinct. (Id. at 111-12, 149-50, 156-60.) One of the officers, David Diaz ("Officer Diaz"), scrolled through the cell phone and dialed a number marked "home," which connected him with Leeann Ashton, who reported that her apartment had just been burglarized. (Id. at 52-53, 162.) Ms. Ashton was taken to the 71st Precinct, where she identified the VCR's, remote, cellphone, and jewelery as her property that was removed from her apartment. (Id. at 54-55, 162-64.) Officer Diaz advised Simpson of his Miranda rights, and took notes of Simpson's subsequent oral statements, in which Simpson admitted that he climbed to the roof of the building, entered Ms. Ashton's apartment through the kitchen window, took the property, and

2

walked out the front door of the building and entered the livery cab with the purpose of selling the property to pay for his cab fare.[1] (Id. at 173-82.)

At a pre-trial Dunaway/Huntley/Mapp hearing, defense counsel argued that the police seizure of items from the livery cab and Petitioner's arrest were both made without probable cause, and that Petitioner's inculpatory statements should be suppressed. (Transcript of Dunaway/Huntley/Mapp Hearing, dated May 23, 2001 ("Dunaway/Huntley/Mapp Hearing Tr."), at 89-90.) The judge issued a written decision finding that the Petitioner lacked standing to contest the seizure of the property from the livery cab, and that the police officers had probable cause to arrest the defendant. (Dunaway/Huntley/Mapp Hearing Memorandum, Justice Deborah A. Dowling, dated May 24, 2001 ("Dunaway/Huntley/Mapp Hearing Memorandum"), at 3-5.) Further, the judge ruled that Petitioner's inculpatory statements made after Petitioner received his Miranda warnings were admissible. (Id.) In a subsequent Sandoval hearing, the judge also ruled that the government could make limited inquiries as to two of Petitioner's prior convictions, but could not discuss the underlying facts of them. (Transcript of Sandoval Hearing, dated May 24, 2001, at 114-16.)

At trial, Officer Diaz testified that Simpson knew Ms. Ashton's brother because they served time in prison together. Defense counsel objected to this reference, claiming it violated the judge's Sandoval ruling, and moved for a mistrial on the ground that Officer Diaz's testimony impaired Simpson's right to a fair trial. (Id. at 216-18.) The judge denied the motion, instead striking the testimony and instructing the jury to disregard it. (Id. at 219.)

---

[1] Officer Diaz's notes of Petitioner's inculpatory statements were admitted into evidence at trial. (Trial Tr., at 181-82.)

The jury began its deliberations on June 4, 2001. (Id. at 233.) On the first day, the jury sent a note to the judge expressing difficulties reaching a unanimous verdict, and the judge instructed the jury to continue deliberating. (Id. at 339-40.) On the second day of deliberations, the jury sent the following note to the judge:

> We have reached an impasse. After a day and a half of deliberation, we are no closer to a resolution than we were when we began . . . . In effect, we see no reason to think that further deliberation will produce anything of value and we sincerely believe that we have given this our best and sincerest effort.

(Id. at 348-49.) Defense counsel moved for a mistrial, which the judge denied, instead giving an Allen charge that consisted of the following closing sentence:

> [J]urors, you swore that if you had a reasonable position on any relevant point or material element based on the evidence or lack of evidence and one or more of your fellow jurors question you about it, that you would be willing and able to give what you believe is a fair and a calm explanation for your position whether it be for conviction or for acquittal."

(Id. at 350-55.) At the end of the second day, the jury convicted Simpson of second-degree burglary and theft of services.[2] (Id. at 362.)

Petitioner appealed the verdict, on the grounds that as the police officers lacked probable cause to arrest Petitioner, the evidence seized incident to the arrest should have been suppressed, that Simpson's due process rights were violated when Officer Diaz testified regarding Simpson's incarceration, and that the court provided a defective Allen charge that placed the burden on a "holdout" juror to explain his vote for acquittal. (Pet's App. Br., dated June 24, 2003, at 19-33.) On February 10, 2004, the Appellate Division denied Petitioner's appeal, denying Petitioner's suppression motion because "[t]he record clearly supports the hearing court's determination

---

[2] As per the judge's instructions, the jury did not announce a verdict as to the alternative counts related to the robbery charge. (Trial Tr., at 362.)

denying suppression because the police had probable cause to arrest the defendant," and finding that Petitioner's other grounds "either are unpreserved for appellate review or without merit." People v. Simpson, 5 A.D.3d 613 (2d Dep't 2004). On May 28, 2004, the Court of Appeals denied leave to appeal. People v. Simpson, 2 N.Y.3d 806 (N.Y. 2004).

Simpson filed the instant Petition pro se on March 24, 2005, reasserting the same grounds as those presented to the Appellate Division.[3] (Petition, at 4.) The Petition, which was filed in the Western District of New York, was transferred to the Eastern District of New York by District Judge David G. Larimer on April 25, 2005. Simpson v. West, slip op., 05-CV-6180 (DGL) (W.D.N.Y. Apr. 25, 2005).

## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court can entertain an application for a writ of habeas corpus by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). I shall first address whether there is an independent and adequate state basis to support the appellate court's affirmance of Petitioner's conviction, and I shall then proceed to address Petitioner's claims on their merits.

---

[3] Simpson writes separately in his Petition that the prosecution asked questions of witnesses ruled impermissible in the Sandoval hearing, and that an "alleged statement" that was not signed or read by him was allowed into evidence. (Petition, at 4.) Petitioner appears to refer to Officer Diaz's testimony about Simpson's recent imprisonment and the admission of Officer Diaz's notes of Simpson's inculpatory statements made after he was provided with Miranda warnings. To the extent that these claims were not raised on direct appeal in state court, these claims are barred because of Petitioner's failure to exhaust. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000). To the extent that Petitioner reasserts claims raised in Petitioner's state appellate brief, they shall be addressed infra.

5

*A.     Independent and Adequate Basis*

The first question that this court must address is whether Petitioner is procedurally barred from asserting any of the claims set forth in the Petition. Generally, a habeas court may not reach a petitioner's federal claim if the judgment of the state court "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Simpson, in this Petition, raises the same claims that were rejected by the state appellate court, i.e. that the evidence seized after the arrest should have been suppressed, that his due process rights were violated when Officer Diaz testified regarding Simpson's incarceration, and that the court provided a defective Allen charge. In its decision, the Appellate Division rejected Petitioner's first suppression claim on the grounds that it lacked merit, and found that the other two claims were "unpreserved for appellate review or without merit." People v. Simpson, 5 A.D.3d 613 (2d Dep't 2004). In the habeas corpus context, a state court's finding that a claim is "unpreserved for appellate review" can be a finding of procedural default. Duren v. Bennett, 275 F. Supp. 2d 374, 378-79 (E.D.N.Y. 2003) (citing Harris v. Reed, 489 U.S. 255, 264 n.10 (1989)); see also, N.Y. Crim. Proc. Law § 470.05(2). However, the Second Circuit in Fama v. Comm'r of Corr. Servs., 235 F.3d 804 (2d Cir. 2000) instructs that a state court that holds that a claim is "either unpreserved or without merit" is preserved. Id. at 809 n.4. Accordingly, I find that Petitioner's grounds for appeal are preserved for habeas review. See id..; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

I shall now turn to the merits of Petitioner's claims.

6

B.     *Petitioner's Claims*[4]

AEDPA reconfigured the standard of review in habeas cases where claims were "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), by requiring "more deferential review." Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2006) (internal quotation omitted). As the Appellate Division ruled that Petitioner's claims lacked merit, see People v. Simpson, 5 A.D.3d 613 (2d Dep't 2004), I review Petitioner's claims under the deferential standard articulated in AEDPA.[5]

As amended by AEDPA, 28 U.S.C. § 2254(d) reads in pertinent part:

---

[4] This court is compelled to comment upon the facts of this case. Bah parked his cab by a building for an unspecified time with a vague promise of future payment. If this were the setting of a dramatic performance, Simpson might never have reappeared from the building, and Bah would have been left to contemplate the absurdity of existence. However, Simpson did reappear, his hands heavy with electronic equipment. Bah thereby became the unlikely driving character in this production, delivering Simpson to his fate at the 71st Precinct. In reading the plight of Bah and Simpson, one is reminded of Vladimir and Estragon in *Waiting for Godot*. However, "[l]et us not waste our time in idle discourse!," Samuel Beckett, Waiting for Godot, in Nine Plays of the Modern Theater, at 182 (1988) (ed. Harold Clurman), as this court is sitting in habeas, not in a theater of the absurd, though the facts of this case might suggest otherwise.

[5] As explained supra, two of the three claims asserted on appeal at the state court and in this Petition were held by the Appellate Division to be "either . . . unpreserved for appellate review or without merit," People v. Simpson, 5 A.D.3d 613 (2d Dep't 2004). There is tension in Second Circuit case law regarding the standard of review of state appeal court decisions that issue a disjunctive affirmance, i.e. an affirmation on an either/or basis. One recent case suggests that a habeas court considering such disjunctive affirmances should "look[] beyond the face of the state court decision to determine whether, among other things, the state court was aware of a procedural bar." See DeBerry v. Portuondo, 403 F.3d 57, 67 n.7 (2d Cir. 2005). However, Ryan v. Miller, 303 F.3d 231 (2d Cir. 2002), which "remains the law of the Circuit absent any supervening decision by the Supreme Court or an *en banc* decision" of the Second Circuit, Messiah v. Duncan, 435 F.3d 186, 198 n.5 (2006), states that "[t]here is no reason . . . to doubt that AEDPA applies to" disjunctive affirmances. Ryan, 303 F.3d at 246. As the government opposed all of Petitioner's claims in state appellate court on substantive and procedural grounds, and Petitioner's claims fail under either AEDPA or pre-AEDPA standards, I apply the AEDPA standard in accordance with Ryan.

7

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's factual finding enjoys a 'presumption of correctness' that the petitioner must rebut by clear and convincing evidence." DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005).

A state court's decision is "contrary" to clearly established federal law as set forth by the Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of the law "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Accordingly, this Court cannot grant the writ if it "concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Second Circuit has warned, however, that while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest

8

judicial incompetence.'" Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc)).

A petitioner must "identify a clearly established Supreme Court precedent that bears on his claim," Loliscio v. Goord, 263 F.3d 178, 191 (2d Cir. 2001), and cannot succeed by showing that the state court misapplied a circuit court precedent. Delvalle v. Armstrong, 306 F.3d 1197, 1199-1200 (2d Cir. 2002). Moreover, the phrase "clearly established" in the AEDPA statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Williams, 529 U.S. at 412. As Simpson proceeds pro se, this court will liberally construe Petitioner's claims.

1. Fourth Amendment Claim

Petitioner's first ground alleges that his conviction was based on evidence obtained pursuant to an unlawful arrest and seizure. Petitioner had a full and fair opportunity to litigate this claim in the state court Dunaway/Huntley/Mapp hearing. In this Circuit, a federal court on habeas review may only review petitioner's Fourth Amendment violation claim if "(a) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (quoting McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 70 (2d Cir. 1983)). At the Dunaway/Huntley/Mapp hearing, Petitioner's counsel moved to suppress the arrest, Petitioner's inculpatory statements, and evidence procured in the search of the livery cab, and said motion was denied orally and also in writing. (Dunaway/Huntley/Mapp Hearing Tr., at 82-101; Dunaway/Huntley/Mapp Hearing

9

Memorandum, at 3-4.) Further, counsel appealed this ruling to the Appellate Division, which rejected the claim on the merits. People v. Simpson, 5 A.D.3d 613 (2d Dep't 2004). As Petitioner has failed to show a lack of state corrective procedures or a breakdown in the underlying process, this claim for habeas relief must be denied. See Stone v. Powell, 428 U.S. 465, 494 (1976).

  2. Improper Testimony

Petitioner next claims that his constitutional rights were violated when the trial judge ruled that striking the testimony of Officer Diaz and providing an instruction to the jury was sufficient to cure the prejudice caused by the witness's testimony of Petitioner's incarceration. Challenges to state evidentiary rulings do not ordinarily provide the basis for habeas corpus relief because it is not the province of a federal habeas court to re-examine state court determinations on state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Only where evidence "is so extremely unfair that its admission violates fundamental conceptions of justice" will a trial court's evidentiary ruling be reviewed by a habeas court. Dowling v. United States, 493 U.S. 342, 352 (1990); Roldan v. Artuz, 78 F. Supp. 2d 260, 276 (S.D.N.Y. 2000) ("Issues regarding the admissibility of evidence in state court . . . are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness.") (quotation marks and citation omitted). Evidence will reach this threshold of unfairness only in rare circumstances where it is "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992)). In light of the judge's curative actions, and the ample evidence supporting Simpson's guilt of the charged offenses,

Petitioner has failed to meet his "heavy burden" of establishing fundamental unfairness. Roldan, 78 F. Supp. 2d at 276.

    3. The Allen Jury Charge

Petitioner's last ground, that the trial judge's instruction to the jury pursuant to Allen v. United States, 164 U.S. 492 (1896) ("Allen charge") violated his constitutional rights, requires this court to consider "whether the [claimed] ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," Cupp v. Naughten, 414 U.S. 141, 147 (1973); see Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001), and if so, whether habeas corpus relief is warranted pursuant to 28 U.S.C. § 2254(d).

In appellate counsel's brief, Petitioner cited the United States Constitution, but asserted that the trial judge's Allen charge was contrary to Supreme Court and New York case law regarding "acceptable formulations of reasonable doubt and burden-shifting formulations." (Pet's App. Br., at 31 (citing Sullivan v. Louisiana, 508 U.S. 275, 280 (1993); In re Winship, 397 U.S. 358, 364 (1970); People v. Antommarchi, 80 N.Y.2d 247, 251 (1992)).) "It is well settled . . . that errors of state law are not subject to federal habeas review." Larrea v. Bennett, 01-Civ.-5813, 2002 U.S. Dist. LEXIS 10067, at *19 (S.D.N.Y. May 31, 2002) (citing McGuire, 502 U.S. at 67-68).

I note from the outset that the Supreme Court has long permitted a charge to a deadlocked jury in a federal trial urging the jurors to consider the opinions and arguments of jurors with different viewpoints material to the guilt or non-guilt of the defendant(s) before them. Allen, 164 U.S. at 501-02. I shall therefore consider "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution," Estelle v.

11

McGuire, 502 U.S. 62, 72 & n.4 (1991) (quoting Boyde v. California, 494 U.S. 370, 380 (1990)), mindful of the Supreme Court's instruction that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146-47.

In delivering the Allen charge, the trial judge expressed the court's preference for the jury to reach a verdict, and stated that "you should attempt to resolve your differences and try to reach a verdict that is in accordance with your findings of the fact and the law of the case as I have explained it to you." (Trial Tr., at 251-52.) Next, the judge reminded the jury of its oath to look at the evidence objectively and to set aside all bias and prejudice, and its promise that if a juror has a reasonable position on any relevant issue "based on the evidence or lack of evidence, . . . that you would be willing and able to give what you believe is a fair and calm explanation for your position whether it be for conviction or for acquittal." (Id. at 352.) The judge emphasized that deliberation requires each juror to "not shut out the views and the arguments of . . . fellow jurors," and that if a consideration of these arguments led a juror to conclude that his or her initial view was wrong, the juror should change his or her position. (Id. at 352-53.) Lastly, the judge urged the jury to "discuss the law and then apply the law as I have explained it to you," and "to use every effort by you that is consistent with your conscience to arrive at a verdict or verdicts in this case." (Id. at 353-54.)

Upon review, this court finds that the trial judge's Allen charge did not violate the Petitioner's federal constitutional rights as set forth in clearly established Supreme Court

precedent.[6] In the habeas context, the Supreme Court has affirmed the use of an Allen charge, even in Section 2254 petitions in which the applicable state law forbids its use, holding that there is no "clearly established" Supreme Court precedent providing for the issuance of a writ on the basis of an Allen charge. Early v. Packer, 537 U.S. 3, 8-10 (2002). The judge in delivering the Allen charge did not specifically speak to the minority juror(s), which indicates that no juror was individually coerced by the instruction. See Lowenfield v. Phelps, 484 U.S. 231, 237-38 (1988) ("The continuing validity of this Court's observations in Allen are beyond dispute, and they apply with even greater force in a case . . . [in which the charge] does not speak specifically to the minority jurors.")

Lastly, the Supreme Court cases cited in Simpson's state appellate brief are clearly distinguishable from those of the instant Petition. Unlike those cases, in which the trial judge applied a lesser standard of guilt than "beyond a reasonable doubt," In re Winship, 397 U.S. at 361-64, or instructed that "beyond a reasonable doubt" is a lower standard than it actually is, Sullivan, 508 U.S. at 277 (citing Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam)), it is undisputed that the trial judge correctly instructed the jury that a defendant is presumed innocent, and correctly articulated the standard of "beyond a reasonable doubt" by which the jury had to find Petitioner guilty of the charged offenses. (Trial Tr., at 293-94, 306-10.) Furthermore, the judge's Allen charge repeatedly instructed the jury to apply the law as previously stated, and for

---

[6] I note for the record that the government in opposing Petitioner's state appellate brief contested this claim on both procedural and substantive grounds. (Gov't Appellate Br., at 44-51.) Defense counsel moved for a mistrial after the jury sent a note stating that it was at an impasse, but did not object to the Allen charge itself. Therefore, Petitioner's claim is arguably waived under New York's contemporaneous objection rule, N.Y. Criminal Procedure Law § 470.05(2). See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999). However, as I found this claim not unpreserved supra, I shall proceed to discuss only the merits of the claim.

13

each juror to be willing to discuss opposing viewpoints. In this light, the judge's Allen charge did not shift the burden of proof, but rather urged each juror to discuss his or her position in an effort to reach a verdict.

Viewing the jury instructions as a whole, I find that there is not a "reasonable likelihood" that the jury applied the Allen charge in a way that violated Petitioner's constitutional rights. Accordingly, I find that the Appellate Division's rejection of Simpson's claim on the merits is not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. 2254(d)(1).

### III. CONCLUSION

For the reasons discussed above, Simpson's petition for a writ of habeas corpus is DENIED. A certificate of appealability shall not issue. The Clerk is directed to close the case.

SO ORDERED.

Date:  May 18, 2006  
       Brooklyn, New York

/s/  
Nicholas G. Garaufis  
United States District Judge